# EXHIBIT 1

**OURARING Inc**

May 15, 2017

Harpreet Rai
4521 Briarwood Drive
Nazareth PA, 18064

    Re:    **INDEPENDENT CONTRACTOR AGREEMENT**

Dear Harpreet,

This letter agreement (this "Agreement") is entered into as of the 15 day of May, 2017, between **Ouraring Inc**, a Delaware corporation (the "Company") and **you – Harpreet Rai** - ("you"). You and the Company may also be singularly referred to as a "Party" and together as "Parties".

We are pleased to have reached an agreement with you upon the following terms and conditions:

1. Independent Contractor. Subject to the terms and conditions of this Agreement, the Company hereby engages you as an independent contractor to perform the services as listed in Exhibit A (the "Services"), and you hereby accept such engagement. This Agreement shall not render you an employee, partner, agent of, or joint venturer with the Company for any purpose. You are and will remain an independent contractor in your relationship to the Company. You represent to the Company that you are familiar with being an independent contractor and that you understand the Company will not issue you a Form W-2 at any time. It also means, among other things, that the Company shall not be responsible for:

    - withholding taxes with respect to your compensation – you are responsible for determining the amount and making your own estimated tax payments to the state and federal tax authorities; or
    - providing you with employee benefits, such as vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability insurance or benefits, unemployment insurance benefits, or other employee benefits of any kind – you must obtain your own benefits.

2. Services. The Services you have agreed to provide to the Company are as listed in Exhibit A. You will determine the method, details, and means of performing the Services. You will also supply all tools, supplies and instrumentalities required to perform the Services under this Agreement. If the Company provides you with any equipment to be used to perform the Services, such as a cell phone, computer or Company products, you will promptly return such equipment to the Company upon the Company's request. You will be provided a Company e-mail account. You understand that you have no expectation of privacy in your Company e-mail account or with respect to your use of the equipment provided to you by the Company.

You represent that you have work authorization in the USA to perform the Services required hereunder. You will comply with all applicable laws and regulations in its performance of this Agreement. **You will** have no power or authority to bind the Company or to assume or create any obligation or responsibility, express or implied, on the Company's behalf or in the Company's name.

3. <u>Compensation.</u> In consideration for the Services to be performed by you, the Company agrees to pay you as provided on <u>Exhibit A</u>.

4. <u>Expenses.</u> You shall not be reimbursed for ordinary and customary expenses, such as charges associated with the use of your own car or the purchase or use of computers, telephone, cell phones, fax, other equipment or office supplies used in your trade. All such ordinary and customary expenses are to be borne by you. However, during the term of this Agreement, you may incur travel, accommodation or other out-of-pocket expenses specific to the Services you provide under this Agreement that go beyond and above what is ordinary and customary. The reimbursement to you of any such expenses shall be subject to the Company's prior approval of the nature and amount of any such expenses. You shall send the Company an itemized bill for all pre-approved reimbursable expenses.

5. <u>Inventions and Copyrights.</u> Any and all inventions, discoveries, developments, innovations and copyrightable works invented, conceived or created by you during the term of this Agreement and eighteen (18) months thereafter, and related to the Services you have provided under this Agreement or the current or anticipated business or products of the Company or its affiliates, shall be the exclusive property of the Company and its affiliates; and you hereby assign all right, title, and interest in the same to the Company and its affiliates. You shall promptly and fully disclose and describe all such inventions, discoveries, developments, innovations and copyrightable works in writing to the Company and such disclosure shall include, if requested, a detailed report of the procedures employed and the results achieved by you. You shall give the Company all assistance it requires to perfect, protect and use its worldwide rights to such inventions, discoveries, developments, innovations and copyrightable works, including, but not limited to, signing all documents, doing all things and supplying all information that the Company may deem necessary or desirable to: (i) transfer or record the transfer of your entire right, title and interest in such inventions, discoveries, developments, innovations and copyrightable works to the Company or one of its affiliates; and (ii) enable the Company or one of its affiliates to obtain and maintain patent, copyright or trademark protection for such inventions and copyrightable works anywhere in the world. The obligations of this paragraph shall continue beyond the termination of this Agreement with respect to inventions, discoveries, developments, innovations and copyrightable works conceived or created by you during the term of this Agreement and eighteen (18) months thereafter.

6. <u>Confidentiality.</u> You acknowledge that during the engagement, you will have access to and become acquainted with confidential and proprietary information, such as various trade secrets, inventions, innovations, processes, information, records, R&D information and plans, product plans, customer contacts and lists, technical information, know-how, and other information of the Company and its affiliates. You agree that you will not disclose any of the aforesaid confidential and proprietary information, directly or indirectly, or use any of it in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement with the Company. All files, records, documents, blueprints, specifications, information, letters, notes, media lists, original artwork/creative, notebooks, and similar items relating to the business of the Company and its affiliates, whether prepared by you or otherwise coming into your possession, shall remain the exclusive property of the Company and its affiliates. You will not retain any copies of the foregoing without the Company's prior written permission. Upon the expiration or earlier termination of this Agreement, or whenever requested by the Company, you will immediately deliver to the Company all such files, records, documents, specifications, information, and other items in your possession or under your control. You will exercise no less than reasonable care in safeguarding the confidentiality of all confidential information entrusted in your care under this Agreement.

You shall not be held criminally or civilly liable under any US Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a US Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. If you file a lawsuit for retaliation by the Company for reporting a suspected violation of US law, you may disclose the trade secret to your attorney and use the trade secret information in the court proceeding, if you file any document containing the trade secret under seal and do not disclose the trade secret, except pursuant to court order. In addition, nothing herein prohibits you from making disclosures that are protected under the whistleblower provisions of an applicable US law or regulation and that are made in compliance of such law, such as reporting possible violations of state or federal law or regulation to any governmental agency, including, but not limited to the US Securities and Exchange Commission, the Congress, or the EEOC.

7. Conflicts of Interest; Non-hire Provision. You represents that you are free to enter into this Agreement, and that this engagement does not violate the terms of any agreement between you and any third party. You agree that you will not improperly use or disclose any proprietary information or trade secrets of any of your former employers or other third person. You agree that for a period of nine (9) months immediately following the termination of your relationship with the Company for any reason, you will not hire any employees of the Company or any of its affiliates and you will not, either directly or indirectly, solicit, induce, recruit or encourage any of such employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away such employees, either for yourself or for any other person or entity.

8. Non-Compete; Non-Solicitation.

    Non-Compete. You agree that during the term of this Agreement and for a period of eighteen (18) months following the termination of this Agreement for any reason, with or without cause, you will not, directly or indirectly, in the Territory (as defined below), own, manage, operate, join, control, advise as a consultant, be employed by or with a Competing Business where doing so will require you to provide the same or substantially similar services to a Competing Business as those that you provided to the Company and its affiliates during the term of this Agreement.

    The "Territory" means the USA, Canada, and any other country in which you, during the term of this Agreement, have served the Company's or one of its affiliates' customers. The Company's and its affiliates' services and solutions are marketed and sold throughout the world. You acknowledge that many of the Company's and its affiliates' customers are multinational corporations engaging the Company or one of its affiliates to provide services and solutions in multiple countries/locations in a seamless manner; or to provide services and solutions enabling the customer to manage their advertising and marketing functions internally between multiple countries/locations, and therefore, a lesser geographic limitation with respect to this covenant not to compete is impractical and not necessary in the context of the business of the Company.

    A "Competing Business" means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is directly engaged in whole or in relevant part in any business or enterprise that is the same as, or substantially similar to, the business of the Company and its affiliates, or that is taking material steps to engage in such business, to wit, wearable technology used to track and analyze sleep patterns and data.

    Non-Solicitation. You agree that during the term of this Agreement and for a period of eighteen (18) months immediately following the termination of this Agreement for any reason, you will

3

not, either directly or indirectly, (i) interfere with the contracts and relationships, or prospective contracts and relationships, of the Company or its affiliates and their customers, including, but not limited to, their customer or client contracts and relationships and consultants, or (ii) solicit any customer or customer prospect of the Company or its affiliates to purchase from you or some other person or entity the products and/or services such customer or customer prospect has purchased, is purchasing or is considering purchasing from the Company or its affiliates.

9. Indemnification. You will indemnify and agree to hold harmless the Company and its affiliates, successors, assigns, officers, directors, shareholders, customers and agents (collectively, the "Company Indemnified Parties") from, against and in respect of the amount of any and all liabilities, losses, claims, expenses, costs, fines, fees, penalties, settlement payments, obligations or injuries, including those resulting from claims, actions, suits, demands, assessments, investigations, judgments, penalties, fines, awards, arbitrations or other proceedings, together with reasonable costs and expenses, including reasonable attorneys' fees and expenses, incurred by Company Indemnified Parties resulting from:

    a) any breach by you of any representation, warranty, covenant or agreement contained in this Agreement; and
    b) any intentional or grossly negligent acts or omissions by you.

10. Term and Termination. This Agreement shall commence on the date first above written and continue in effect for a period of four (4) months initial term. Thereafter, this Agreement automatically continues month-to-month unless terminated by either Party prior to the end of the initial term. During the term, either Party may terminate this Agreement at any time upon at least thirty (30) days prior written notice or with immediate effect by written notice to the other Party in any of the following events:

    a) if the other Party becomes insolvent, is adjudged bankrupt or becomes the subject of dissolution, liquidation, debt restructuring or bankruptcy proceedings that are not dismissed within thirty (30) days after they are instituted whether voluntarily or involuntarily or if the other Party applies for judicial or extra-judicial settlement with its creditors, makes an assignment for the benefit of creditors, or otherwise discontinues business; or

    b) if the other Party is in breach or default of the material terms or conditions of this Agreement and shall fail to remedy such breach or default within twenty (20) days of receipt of a written notice from the other Party asserting the breach or default.

    In addition, if you are convicted of any crime or offense, the Company at any time may terminate this Agreement immediately and without prior written notice to you.

    Sections 5, 6, 7, 8, 9 and 10 shall survive the termination or expiration of this Agreement for any reason.

11. Successors and Assigns; Assignment. All of the provisions of this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, and assigns. The Services to be performed hereunder are personal to you and the Company has engaged you based on your personal qualifications. Therefore, you may not assign this Agreement.

12. Waiver. Waiver by one Party hereto of breach of any provision of this Agreement by the other shall not operate or be construed as a continuing waiver.

4

13. <u>Notices.</u>  Any and all notices, demands, or other communications required or desired to be given hereunder by any Party shall be in writing and shall be validly given or made to the other Party if personally served, or if deposited in the mail, certified or registered, postage prepaid, return receipt requested.  If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service.  If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the mail addressed to the Party to whom such notice, demand or other communication is to be given as follows:

    If to you:              Harpreet Rai
                            E-mail: harpreet@ouraring.com
                                    hsrai14@gmail.com

    If to the Company:      Ouraring Inc.
                            Petteri Lahtela
                            Elektroniikkatie 3
                            90590 Oulu, Finland
                            E-mail: petteri.lahtela @ ouraring.com

    Notice may also be given via e-mail to the e-mail addresses provided above and shall be deemed effective upon acknowledgment by the receiving Party of such e-mail by an e-mail reply or otherwise. Either Party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

14. <u>Modification or Amendment.</u>  No amendment, change or modification of this Agreement shall be valid unless in writing signed by the Parties hereto.

15. <u>Unenforceability of Provisions.</u>  If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

16. <u>Governing Law; Dispute Resolution</u>.  **THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA WITHOUT REGARD FOR CONFLICT OF LAWS PRINCIPLES OF ANY JURISDICTION.**  Prior to resorting to court action, both Parties shall use their best efforts to settle by amicable negotiations any disputes which may occur between them arising out of or relating to this Agreement or the existence, validity, termination, interpretation of any term hereof or either Party's performance obligations hereunder.

17. <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Company and you relating to the subject matter herein and supersedes all prior discussions between the Company and you.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Party to be charged.

18. <u>Headings.</u>  Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

19. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be enforceable, and all of which together, when executed and delivered, shall constitute one agreement.

For the avoidance of doubt, the terms of this Independent Contractor Agreement shall not affect Harpreet Rai's rights and obligations under the Shareholders Agreement or Investment Agreement dated 5 September 2016.

If this letter agreement accurately reflects our understanding and agreement, please sign this letter agreement and return it to me. I will then sign them and return one signed copy for your records.

Sincerely,

**OURA RING Inc**

_____
Petteri Lahtela, CEO


Read and agreed to, this 16th day of May, 2017:

_____
Harpreet Rai

## EXHIBIT A

**SERVICES:**

As requested by the Company during the term of this Agreement, you will assist the Company and its US subsidiary in C-level sales, marketing, partner channel development and other business development activities. You will work closely with the Company's CEO with respect to the Services to be provided by you and will regularly report to the Board.

As part of the Services to be provided hereunder, you will also be asked to accept an appointment as the Company's US subsidiary C-level executive officer on an independent contractor basis. Such appointment and the termination of such appointment is subject to a resolution of the subsidiary's Board of Directors.

During the term of this Agreement, you will devote as much of your productive time, energy and abilities to the performance of your Services hereunder as is necessary to perform the required duties in a timely, professional and productive manner. You are free to perform any business services for other parties while performing Services for the Company only if approved by the Board of the Company.

**COMPENSATION:**

Your monthly compensation for all Services provided under this Agreement will be $ 8,333.00 per month, payable against a monthly invoice prepared by you.

You will be entitled to a non-qualified stock option to purchase 142, 078 shares of the Common Stock of the Company. Such option is subject to the terms of the Company's stock option plan and documentation, commencement of your Services under this Agreement, and completion on a 409A valuation to determine the appropriate exercise price for such option.