**DYNAMIS LLP**
CONSTANTINE P. ECONOMIDES (CA SBN 363454)
ceconomides@dynamisllp.com
1111 Brickell Avenue, 10th Floor
Miami, FL 33131
Tel: (305) 985-2959

ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
TYLER FINN (*pro hac vice*)
tfinn@dynamisllp.com
KAITLYN GERBER (*pro hac vice*)
kgerber@dynamisllp.com
175 Federal Street, Suite 1200
Boston, MA 02110
Tel: (617) 802-9157

YUSEF AL-JARANI (CA SBN 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, CA 90024
Tel: (213) 283-0682

*Attorneys for Plaintiff Harpreet Singh Rai*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND/SAN FRANCISCO DIVISION

| | |
|---|---|
| HARPREET SINGH RAI,<br><br>*Plaintiff*,<br><br>v.<br><br>OURARING INC., OURA HEALTH OY,<br><br>*Defendants*. | Case No. 3:25-cv-09654-AMO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: April 3, 2026<br>Time: 2:00 pm<br>Place: Courtroom 10, 450 Golden Gate Avenue, San Francisco, CA<br>Judge: Hon. Araceli Martínez-Olguín<br><br>Concurrently Filed/Lodged With:<br>1. Declarations of Harpreet Rai and Constantine Economides;<br>2. Exhibits;<br>3. Proposed Order |

DYNAMIS LLP

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on April 3, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable Judge Araceli Martinez-Olguin, United States District Judge of the United States District Court for the Northern District of California, located in Courtroom 10 at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Harpreet Singh Rai ("Rai" or "Plaintiff") will, and hereby does, move, pursuant to California Rules of Professional Conduct, Civil Local Rule 11-4, and this Court's inherent authority, for an order disqualifying Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and its attorneys from representing Defendants Ouraring Inc. and Oura Health Oy (collectively, "Oura" or "Defendants") in this action and any other substantially-related action due to Quinn Emanuel's conflict of interest. Prior to filing the instant Motion, counsel for both parties conferred on December 17, 2025, regarding said Motion, and subsequently corresponded via email.

Specifically, Plaintiff respectfully requests that this Court disqualify Quinn Emanuel from representing Oura in this matter on the grounds that, before Quinn Emanuel became counsel for Defendants, Rai consulted with Quinn Emanuel regarding representation in this very same matter. As part of that consultation, and in the process of counseling Rai, Quinn Emanuel elicited and received substantial confidential information that was material to this litigation, including Rai's intended litigation strategy against Oura. Quinn Emanuel's purported "ethical screening procedures" are insufficient to protect Rai's confidential information and thus, Quinn Emanuel must be barred from representing Oura in this matter, or any substantially-related matter, under Rule 1.18 of the California Rules of Professional Conduct. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all cited authorities, all pleadings and papers on file in this action, the concurrently filed declarations and exhibits, and such oral argument and other evidence as the Court shall consider prior to or at the time of hearing on this Motion.

Dated: Dec. 22, 2025                    Respectfully submitted,

**DYNAMIS LLP**

By:    */s/ Constantine P. Economides*

DYNAMIS LLP

CONSTANTINE P. ECONOMIDES (CA SBN 363454)
*Attorney for Plaintiff Harpreet Singh Rai*

DYNAMIS LLP

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

# <u>TABLE OF CONTENTS</u>

DYNAMIS LLP

I.      INTRODUCTION ................................................................................................................3

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................................4

III.    STATEMENT OF RELEVANT FACTS ..........................................................................4

    A.      Multiple Individuals Sue Oura for Failing to Pay Proper Compensation in the Form of Stock and Stock Options. ................................................................4

    B.      Rai Consults with Quinn Emanuel about Representation in Litigation Against Oura, and Discloses a Substantial Amount of Confidential Information about His Claims and Case Strategy. ........................................................5

    C.      Quinn Emanuel Failed to Seek Rai's Written Consent to Represent Oura and Failed to Enact a Timely Screen to Prevent Rai's Confidential Information from Being Provided, Even Inadvertently, to Oura's New Counsel. .....................8

    D.      Two Days After Appearing for Oura in the Attia Litigation, Quinn Emanuel Informs Rai That the Firm Also Represents Oura Against Rai in Rai's Litigation. ..............................................................................9

IV.     STANDARD OF REVIEW ..............................................................................................10

V.      ARGUMENT ...................................................................................................................11

    A.      Quinn Emanuel Violated Rule 1.18. ...................................................................12

        1.      Plaintiff was a "prospective client" of Quinn Emanuel. ..........................14

        2.      Quinn Emanuel received from Rai confidential information that is material to this litigation. ..........................................................15
            a.      Confidentiality..............................................................15
            b.      Materiality .................................................................16

        3.      Quinn Emanuel has not met the exceptions under Rule 1.18(d). .............18
            a.      Quinn Emanuel did not take reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent Rai..............................18
            b.      Quinn Emanuel did not timely establish a sufficient ethical screen.................................................................19

    B.      The Equities Also Favor Disqualification. ..........................................................22

    C.      Quinn Emanuel or Oura Should Pay Plaintiff's Fees and Costs Incurred in Bringing This Motion. ...............................................................24

VI.     CONCLUSION ................................................................................................................25

i

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Messaging Techs., Inc. v. EasyLink Services Intern. Corp.*,
  913 F. Supp. 2d 900 (C.D. Cal. 2012) ........................................................................ 24

*Bank of Korea v. ASI Corp.*,
  No. CV 16-2056-MWF (JPRX), 2019 WL 8200603 (C.D. Cal. Jan. 16, 2019) .................. Passim

*Bold Ltd. v. Rocket Resume, Inc.*,
  No. 22-cv-01045-BLF, 2024 WL 589116 (N.D. Cal. Feb. 13, 2024) ........................... 11

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
  264 F. Supp. 2d 914 (N.D. Cal. 2003) ...................................................................... 10

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
  No. 18-CV-05546-EMC, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019) ...................... 12, 15, 17, 22

*ESC-Toy Ltd. v. Sony Interactive Entertainment LLC*,
  No. 21-cv-00778-EMC, 2024 WL 1335079 (N.D. Cal. Mar. 27, 2024) ...................... 11

*Fluidmaster, Inc. v. Fireman's Fund Ins. Co.*,
  25 Cal. App. 5th 545, 235 Cal.Rptr.3d 889 (2018) ...................................................... 21

*Google LLC v. NAO Tsargrad Media*,
  2024 WL 4844799 ................................................................................................ 21

*HDMI Licensing Administrator, Inc. v. Availink Inc.*,
  730 F. Supp. 3d (N.D. Cal. 2024) ...................................................................... 14, 19, 20

*Kirk v. First Am. Title Ins. Co.*,
  108 Cal.Rptr.3d 620 (2010) .................................................................................. 19

*Klein v. Facebook, Inc.*,
  No. 20-CV-08570-LHK, 2021 WL 3053150 (N.D. Cal. July 20, 2021) ...................... 12

*Ocean Thermal Energy Corp. v. Coe*,
  No. LACV19-05299-VAP-JPR, 2020 WL 5237276 (C.D. Cal. July 29, 2020) ........ 11, 12, 15, 23

*REC Solar Grade Silicon, LLC v. Shaw Group, Inc.*,
  No. CV-09-188-RMP, 2011 WL 13228176 (E.D. Wash. Feb. 23, 2011) ...................... 24

*Rocha v. Ford Motor Company*,
  No. 24CV1543-GPC(VET), 2025 WL 3527150 (S.D. Cal. Dec. 9, 2025) ....................... 11

DYNAMIS LLP

ii

*SC Innovations, Inc. v. Uber Techs., Inc.*,
  2019 WL 1959493 (N.D. Cal. May 2, 2019) ............................................................... 24

*Signature MD, Inc. v. MDVIP, Inc.*,
  No. CV 14-5453-DMG (SSx), 2015 WL 12781603 (C.D. Cal. Jan. 20, 2015).................... 19, 21

*SkyBell Techs., Inc. v. Ring, Inc.*,
  No. SACV-18-00014 JVS (JDEX), 2018 WL 6016156 (C.D. Cal. Sept. 18, 2018) . 14, 16, 17, 18

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) ............................................................................. 10, 17

*Winter v. Menlo*,
  331 Cal.Rptr.3d 377 (Cal. Ct. App. 2025) ............................................................ 16, 19, 22

*X Corp. v. Bright Data Ltd.*,
  2024 WL 3408220 (N.D. Cal. July 12, 2024) .............................................................. 24

**Statutes**

28 U.S.C. § 1927 ............................................................................................... 24

Cal. Bus. & Prof. Code § 6068(e)(1) ........................................................................ 15

**Rules**

Rule 1.18 of the California Rules of Professional Conduct ..................................... Passim

**Other Authorities**

N.D. Cal. Civ.,
  L.R. 11-4 ................................................................................................... 12

Dynamis LLP

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND
AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**I.    INTRODUCTION**

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel" or "the Firm") must be disqualified from representing Ouraring Inc. and Oura Health Oy (collectively, "Oura" or "Defendants") in this litigation, as Quinn Emanuel's conduct violates Rule 1.18 of the California Rules of Professional Conduct ("Rule 1.18").

In October 2025, Harpreet Singh Rai ("Rai" or "Plaintiff") consulted with Quinn Emanuel regarding the possibility of representation in this litigation, as well as in other litigation adverse to Oura. The attorneys at Quinn Emanuel were receptive and encouraging. To discuss and assess the litigation, they held three successive hourlong meetings and exchanged numerous emails with Rai. In those repeated communications, Rai disclosed material and confidential information, including nonpublic documents, advice he had received from other attorneys, and the risks and benefits of a proposed litigation strategy. Rai ultimately retained other counsel and commenced this litigation.

To Rai's surprise, approximately ten days from Rai's last email with Quinn Emanuel, Quinn Emanuel informed Rai that the Firm would be representing Oura in this litigation—despite having received Rai's confidential information and case strategy against Oura. Quinn Emanuel never warned Rai about this possibility, never flagged a potential conflict, never told Rai that the firm was consulting Oura for representation in the same case, and never restricted the information Rai provided. Rai would not have trusted Quinn Emanuel with privileged and confidential information if Rai had known that the Firm could or would consult with or represent Rai's adversary *in the same case*. Moreover, in its effort to justify its obvious ethical and professional conflict, Quinn Emanuel provided Rai with a "Notice of Ethical Screening," weeks after the conflict arose, that presents more concerns than answers about the propriety of the Firm's conduct. Despite the requirements under Rule 1.18, the Firm did not implement conflict and screening measures until well *after* the Firm had consulted with both Rai (the Plaintiff) and Oura (the Defendants) about this litigation. The Firm's ethical screen, moreover, does not apply to multiple Quinn Emanuel attorneys and employees who received (and apparently still have access to) Rai's confidential case information. As of this filing,

DYNAMIS LLP

3

it is still unclear whether Quinn Emanuel is sufficiently protecting Rai's information. Indeed, Rai remains baffled by the notion that a law firm can solicit his confidential case strategy and then turn around and represent his adversary in the very same case.

On this record, Quinn Emanuel has not shown—and cannot show—compliance with Rule 1.18. Consequently, for the reasons stated herein, Plaintiff respectfully requests that the Court grant this motion and disqualify Quinn Emanuel.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Plaintiff respectfully requests that the Court decide the following issues:

(1)    Did Quinn Emanuel violate Rule 1.18?

(2)    Should Quinn Emanuel be disqualified from representing Defendants?

(3)    Should Quinn Emanuel be responsible for Plaintiff's fees incurred in bringing this Motion?

## III.    STATEMENT OF RELEVANT FACTS

### A.    Multiple Individuals Sue Oura for Failing to Pay Proper Compensation in the Form of Stock and Stock Options.

Oura, the maker of a popular wearable health ring, has been on a high-velocity upward growth trajectory over the past few years, increasing its worth from tens of millions of dollars to over ten billion dollars—due in large part to hard work and effort by Rai, Oura's former CEO. But despite its success, Oura seems intent on leaving behind those who contributed to its astronomic growth. Multiple lawsuits have now been filed in the Northern District of California alleging, in essence, that Oura has refused to honor its promises to provide those who built the company with the stock options that Oura had contractually promised to pay. For example, on July 1, 2025, Gurinder Bal, an early investor and marketer, sued Oura claiming that he is owed approximately $16 million in stock after investing $400,000 in the company and providing deeply-discounted marketing services. *See Bal et al. v. Ouraring Inc. et al.*, 3:25-CV-05518-RFL (N.D. Cal.) (ECF No. 1). In its defense, Oura blamed Rai, claiming among other defenses that the Company's board never authorized Rai to approve Bal's equity grants (ECF No. 19.).

*DYNAMIS LLP*

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

An earlier lawsuit, filed on July 10, 2023 by Dr. Peter Attia, included similar allegations against Oura. *See Attia v. Oura Ring Inc. et al.*, 4:23-cv-03433-HSG (N.D. Cal.) (ECF No. 1; ECF No. 75). As in *Bal*, *Attia* alleges that Oura, through Rai, had sought and benefitted from Attia's services as a medical advisor and had provided Attia a written options contract in exchange for those services, which Attia signed in February 2019 (ECF No. 75). However, when Attia sought to exercise his options in January 2022, Oura's board refused to honor those options, first offering lesser monetary compensation for his past efforts and ultimately refusing to honor the options at all (ECF No. 75). As with *Bal*, Oura blames Rai for Oura's dispute with Attia. Oura has claimed that Rai lacked the authority to grant the options, that Rai's statements about Oura's board approving Attia's options were false, and that Oura's board never approved the options in the first place (ECF No. 75, 81). Shortly after Attia filed his first Complaint in 2023, moreover, Oura sued Rai in Finland, alleging that Rai is responsible for Oura's damages and seeking attorney's fees related to Attia's litigation. *See* Declaration of Harpreet Singh Rai ("Rai Decl.") ¶ 16. The Finnish action has been stayed pending resolution of Attia's matter in this Court. *Id.*

**B.** **Rai Consults with Quinn Emanuel about Representation in Litigation Against Oura, and Discloses a Substantial Amount of Confidential Information about His Claims and Case Strategy.**

Given the adversarial posture between Oura and Rai, in the United States and Finland, any Firm conducting a <u>proper</u> conflict check would not have solicited or received material confidential information from *both* Oura and Rai. A proper conflict check would have revealed that Oura and Rai are adverse and that the same firm could never represent both parties. A proper procedure then would have prohibited further consultation with the second party (in this case Oura) or would have ensured that consults with Oura and Rai excluded confidential or privileged information. And the firm should have advised both parties of the dual consultations and putative conflict. But Quinn Emanuel's conflict check and conflict procedures were *not* proper.

On Friday, October 10, 2025, Rai emailed Michael Carlinsky, the New York-based Co-Managing Partner of Quinn Emanuel and the Global Head of Complex Litigation, seeking legal

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

DYNAMIS LLP

representation. Rai Decl. ¶ 2. In his email, Rai explained that he was the former CEO of Oura Ring and that he wanted to discuss a possible claim against Oura. Declaration of Constantine P. Economides ("Economides Decl."), Exhibit P ("Ex. P").[1] Carlinsky responded and requested the names of all parties who would be potentially adverse, in order to run a conflict check. *Id*. Rai replied, "[a]ssuming the initial email and the below is all privileged and confidential," and provided a list of all entities and individuals who could be named in litigation—including "Oura and the board." *Id*. Carlinsky requested a day to "work through this," thus implying that he would be running a conflict check *Id*. Three days later, on October 13th, Carlinsky responded: "Harpreet, without disclosing anything privileged, what is the estimated size of your claim?" *Id*. After Rai responded, Carlinsky scheduled a call with Rai for Friday, October 17th, and copied Robert Loigman and Jonathan Oblak (two Partners in Quinn Emanuel's New York City office) on the email, which included the earlier chain with confidential information from Rai. *Id*.

The October 17th call included Carlinsky, Oblak, and Rai. Rai Decl. ¶ 3. During the call, the parties discussed the factual history, possible relevant documents, and other aspects of litigation strategy related to the claim(s). *Id*. Immediately afterwards, Rai sent two nonpublic documents that have not been disclosed in this litigation and that are directly relevant to currently unfiled claims against Oura. Rai Decl. ¶ 3; Ex. P. Carlinsky and Oblak specifically elicited these documents from Rai. Rai Decl. ¶ 3. The parties exchanged further emails over the next few days, through which Rai disclosed additional confidential information about this litigation and other unfiled claims and Rai referenced additional nonpublic communications relevant to those claims. Ex. P. Oblak replied and suggested additional information that Rai could look for to support the claims against Oura. *Id*.

On October 23, Rai spoke with Oblak and Jack Sadler (an associate in Quinn Emanuel's New York office). Rai Decl. ¶ 5. During the call, the parties further discussed the facts of Rai's cases and crucial aspects of Rai's litigation strategy. *Id*. After the call, Rai then sent Oblak and Carlinsky a detailed follow-up email, again labeled "privilege[d] and confidential," which included

---

[1] Due to the cumulative nature of email exchanges, citations will generally be made to the exhibit that captures the most complete version of the conversation (Ex. P).

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

DYNAMIS LLP

factual information about this case and other cases, details of Rai's conversations with other lawyers (including legal advice), and Rai's mental impressions about the case and various events. Rai Decl. ¶ 6; Ex. P. The email referenced the existence of additional confidential, nonpublic documents. Rai Decl. ¶ 6; Ex. P. The majority of the information in that email is nonpublic and was not disclosed in Rai's subsequent Complaint in this action (ECF No. 1). Rai's email also explained that Oura had sued Rai in Finland in the *Attia* litigation. Ex. P. Oura was already directly adverse to Rai.

Oblak replied and solicited further information from Rai, including whether he had discussed a specific issue with other counsel. Ex. P. Rai's response included additional confidential facts, documents, and information relevant to legal strategy. *Id.*

Rai next spoke with Oblak and Sadler via Zoom on October 27, 2025, and further discussed litigation strategy (including confidential information specific to the *Attia* litigation). Rai Decl. ¶¶ 7-10. During that call, Oblak explained that he had solicited advice from colleagues in Europe about key strategic element of Rai's cases, and Oblak relayed to Rai the strategic advice received from those colleagues. Rai Decl. ¶ 7. To date, Quinn Emanuel has not disclosed the identities of the European colleagues. Economides Decl. Ex. A, C, D. In total, Rai had three videoconference calls with some combination of Carlinsky, Oblak, and Sadler. Rai Decl. ¶¶ 3, 5, 7-8; Ex. P.

Rai ultimately decided to retain the undersigned firm to represent him, and on November 6th, he emailed Oblak and outlined the reasoning (which included confidential information about Rai's financial position). Rai Decl. Ex. 2. On November 7th, Oblak responded: "I totally understand, and that makes complete sense. Good luck with your claims, and please don't hesitate to reach out if we can be of assistance on anything else." *Id.* At no point was Rai advised that Oura was now consulting with the Firm about representation in the *Attia* matter. That evening, shortly before midnight eastern time (nearly 9:00 p.m. PST), Rai filed the Complaint in this matter. (ECF No. 1).

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND
AUTHORITIES

**C.** **Quinn Emanuel Failed to Seek Rai's Written Consent to Represent Oura and Failed to Enact a Timely Screen to Prevent Rai's Confidential Information from Being Provided, Even Inadvertently, to Oura's New Counsel.**

Quinn Emanuel has now, after multiple requests, informed counsel that Diane Cafferata began consulting with Oura on November 4, 2025 about the substantially-related *Attia* matter. Economides Decl. Ex. D. This date was shortly after Rai's last substantive discussion with Quinn Emanuel, but it was *not* before the November 6-7, 2025 communications noted above. On November 7, 2025, Oura first approached Quinn Emanuel about representing the Company in the instant litigation. Economides Decl. Ex. D.

Oura retained Quinn Emanuel on or about November 11, 2025, and on November 17, 2025, Diane Cafferata, a partner in Quinn Emanuel's Los Angeles and Chicago offices, filed a notice of appearance on behalf of Oura Health Ltd. and Ouraring Inc. in *Attia v. Oura Ring Inc. et al.* (litigation that, as described above, has been ongoing for over 2 years). *See* 4:23-cv-03433 (N.D. Cal.) (ECF No. 149); Economides Decl. Ex. D.

In short, by mid-October 2025, Quinn Emanuel had received confidential information from Rai, a prospective client, that would have precluded the Firm from representing Oura in either this litigation or in any substantially-related matter, such as the *Attia* litigation. When Quinn Emanuel began consulting with Oura regarding the *Attia* matter on November 4, 2025, the Firm neither asked for Rai's written consent to proceed with Oura (which he would not have given), nor set up a proper screen between the affected lawyers. Ra Decl. ¶¶ 11-12. Because of that, Rai was not provided prompt written notice of the conflict so as to "enable" him to "ascertain compliance with the provisions of" Rule 1.18.

In addition, although fact discovery has ended in the *Attia* case, Rai's counsel has learned that Quinn Emanuel intends to move the court to re-open fact discovery for the specific purpose of deposing Rai (likely about the same confidential information that Rai had already provided to Quinn Emanuel). Economides Decl. ¶ 11.

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

**D.**     **Two Days After Appearing for Oura in the Attia Litigation, Quinn Emanuel Informs Rai That the Firm Also Represents Oura Against Rai in Rai's Litigation.**

As described, Rai filed his federal complaint on November 7, 2025, shortly before midnight eastern time, and Quinn Emanuel filed a notice of appearance in the *Attia* matter on November 17, 2025. As of that date, even though Quinn Emanuel was already consulting with Oura about Rai's matter, Quinn Emanuel still had not notified Rai about the conflict or created an ethical wall. *See generally* Economides Decl. Ex. A-D.

On November 19, 2025, Kerri Riley, Quinn Emanuel's Global Head of Conflicts, sent a Notice of Screening to Rai (via the undersigned counsel) on behalf of Harry Olivar, Chair of Quinn Emanuel's National Securities Practice, Co-Chair of the Firm's Domestic Arbitration Practice, and Firm General Counsel. *See* Economides Decl. ¶¶ 4-5; Ex. A; Ex. D. Olivar and Riley are both located in Quinn Emanuel's Los Angeles office. The notice stated that Quinn Emanuel had been "retained" to represent Oura in this litigation (without mentioning the *Attia* matter) and outlined the ethical screening procedures that Quinn had purportedly implemented. *See* Economides Decl. Ex. A. Subsequently, on November 28th, Melissa Lovato, an Associate Attorney in Quinn Emanuel's Los Angeles Office, contacted the undersigned counsel and stated that she and Cafferata would be representing Oura in this litigation. Economides Decl. ¶ 10. Cafferata filed a notice of appearance on behalf of Oura Health Oy and Ouraring Inc. on December 1, 2025 (ECF No. 22).  Rai's counsel promptly requested additional information about the alleged "ethical screen," including:

- the names of every attorney and staff member involved in Rai's consultation with the Firm;
- the date that Oura first contacted Quinn regarding the possibility of representation in Rai's matter and in the *Attia* case;
- the date that the Firm "first opened a file for *Oura*";
- the date that Quinn first discovered the conflict;
- the name of the attorney(s) at the Firm who Oura first contacted; and

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

- copies of non-privileged documents demonstrating the procedural implementation of the ethical screen.

*See* Economides Decl., Ex. B (emphasis added). In response, although Quinn Emanuel did not answer many of the questions, the Firm stated that "[n]one of these three attorneys"—that is, Carlinsky, Oblak, and Sadler—"communicated with any other Quinn Emanuel lawyers about Mr. Rai's potential matter or the Oura engagement, or with any Oura representative." *Id.*, Ex. C. The Firm also stated that "the three attorneys who obtained confidential information (Messrs. Carlinsky, Oblak, and Sadler) are properly and timely screened." *Id.* The Firm did not provide any information about staff members who were involved with or handled Rai's confidential information, nor did the Firm disclose when it became aware of the conflict. *Id.* Instead, the letter simply stated that the Firm implemented the ethical wall on November 18, 2025, and opened "this matter" for Oura on November 19. *Id.* The letter also provided a secure link with the materials that Rai provided to Carlinsky and Oblak, which were uploaded by Marco Perez, an employee at the Firm's Los Angeles office (where Cafferata is located). Economides Decl. Ex. E. Those emails, in redacted form, are provided as Economides Decl. Exhibits F through R.

In correspondence on December 11, 2025, Quinn Emanuel informed counsel that, "Oura contacted our firm on or about November 7, 2025 regarding the matter involving Mr. Rai. As stated in our letter, we opened the matter on November 19, 2025. We are not able to provide information about Oura matters that do not involve your client." Economides Decl. Ex. D. However, on December 17, 2025, Quinn Emanuel, as described, asserted that Oura began consulting Cafferata on the *Attia* matter on November 4, 2025, approximately two weeks *before* any type of screen was implemented. *Id.*

## IV.    **STANDARD OF REVIEW**

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

(N.D. Cal. 2003).[2] Indeed, "[t]he primary responsibility for controlling the conduct of lawyers practicing before the district court rests with that court." *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *see also Rocha v. Ford Motor Company*, No. 24CV1543-GPC(VET), 2025 WL 3527150, at *6 (S.D. Cal. Dec. 9, 2025) ("A trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.") (cleaned up).

Importantly, "[c]ourts subject disqualification motions to strict judicial scrutiny because they present the threat of tactical abuse." *ESC-Toy Ltd. v. Sony Interactive Entertainment LLC*, No. 21-cv-00778-EMC, 2024 WL 1335079, at *6 (N.D. Cal. Mar. 27, 2024). Nonetheless, "the paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar and the important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045-BLF, 2024 WL 589116, at *4 (N.D. Cal. Feb. 13, 2024) (cleaned up). Accordingly, "while disqualification is a drastic measure and motions to disqualify are sometimes brought by litigants for improper tactical reasons, disqualification is not generally disfavored. Indeed, when the circumstances of a disqualifying conflict exist . . . disqualification is required." *Rocha*, 2025 WL 3527150, at *6 (cleaned up). Finally, "[t]he district court is permitted to resolve disputed factual issues in deciding a motion for disqualification and must make findings supported by substantial evidence." *Ocean Thermal Energy Corp. v. Coe*, No. LACV19-05299-VAP-JPR, 2020 WL 5237276, at *2 (C.D. Cal. July 29, 2020).

## V.    **ARGUMENT**

Quinn Emanuel meets every requirement for disqualification. The Firm solicited and received Rai's confidential and privileged information about Rai's disputes against Oura, and the Firm agreed to represent Oura against Rai in that same dispute as well as in a substantially-related

---

[2] Unless otherwise noted, internal citations and quotations have been omitted, and emphasis has been added.

DYNAMIS LLP

matter (the *Attia* matter). The Firm now possesses the privileged and confidential information (including strategy assessments) of the parties on both sides of this dispute—*i.e.*, creating an unethical, impermissible conflict that prejudices Rai. And Quinn Emanuel, a firm with immense resources, failed to implement and follow proper conflict procedures to protect Rai from this precise harm. If left unchecked, Quinn Emanuel's conduct will harm Rai and also chill the willingness of prospective clients to trust licensed attorneys. Thus—under California law and for the reasons explained below—Quinn Emanuel should be disqualified from representing Oura in this litigation.

"California law governs motions to disqualify counsel." *Ocean Thermal Energy Corp.*, 2020 WL 5237276, at *2; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-CV-05546-EMC, 2019 WL 144589, at *3 (N.D. Cal. Jan. 9, 2019) ("Lawyers appearing before this Court must 'comply with the standards of professional conduct required of the members of the State Bar of California.'") (quoting N.D. Cal. Civ. L.R. 11-4(a)(1)). Under California law, "two requirements must be met in order for the Court to disqualify counsel." *Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at *4 (N.D. Cal. July 20, 2021). "First, counsel must have violated the Rules of Professional Conduct. Second, the Court must conclude that it is appropriate to order disqualification" *Id.* (internal citation omitted). Each requirement has been met.

**A.  Quinn Emanuel Violated Rule 1.18.**

"Rule 1.18 of the California Rules of Professional Conduct ('Rule 1.18'), which went into effect on November 1, 2018, sets forth the duties owed by an attorney to a prospective client." *Ocean Thermal Energy Corp.*, 2020 WL 5237276, at *4. Rule 1.18 defines "prospective clients" and dictates that a lawyer "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter" but only if "the lawyer received from

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

DYNAMIS LLP

the prospective client" material confidential information. Rule 1.18(a),(b),(c).[3] Furthermore, if a lawyer has a conflict with a prospective client, then "no lawyer in a firm with which that [conflicted] lawyer is associated may knowingly undertake or continue representation in such a matter . . . ." Rule 1.18(c). Finally, under Rule 1.18(d), there are limited exceptions for a firm, but only if *every* conflicted lawyer: "took reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent the prospective client"; **and "**is timely screened from any participation in the matter"; **and** "is apportioned no part of the fee therefrom"; **and** "written notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule." Rule 1.18(d) (emphasis added).

---

[3] In full, Rule 1.18 provides as follows:

(a) A person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in the lawyer's professional capacity, is a prospective client.

(b) Even when no lawyer-client relationship ensues, a lawyer who has communicated with a prospective client shall not use or reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that the lawyer learned as a result of the consultation, except as rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received from the prospective client information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that is material to the matter, except as provided in paragraph (d). If a lawyer is prohibited from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received information that prohibits representation as provided in paragraph (c), representation of the affected client is permissible if:

(1) both the affected client and the prospective client have given informed written consent, or

(2) the lawyer who received the information took reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent the prospective client; and

(i) the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii) written notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule.

DYNAMIS LLP

13

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

In sum, a court should begin the Rule 1.18 analysis by addressing three issues: (i) whether the movant was a "prospective client" of the firm that is facing disqualification; (ii) whether the firm received, from the prospective client, information that was "confidential" and "material" to the subject litigation; and (iii) whether the firm's client has interests that are materially adverse to the prospective client's interests. If the firm received confidential, material information from a prospective client and then took or continued with an adverse engagement, then the firm must show (under Rule 1.18(d)) "reasonable measures to avoid exposure," "timely screen[ing]," fee apportionment, **and** prompt "written notice." Rule 1.18(d); *see also, e.g.*, *HDMI Licensing Administrator, Inc. v. Availink Inc.*, 730 F. Supp. 3d 1036, 1034 (N.D. Cal. 2024) (explaining that vicarious disqualification is a rebuttable presumption which can be "refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case"). If the firm cannot show all four of those elements, then the firm is violating Rule 1.18.[4]

Under that analysis, Quinn Emanuel is violating Rule 1.18. First, Rai was a prospective client of Quinn Emanuel. Second, Quinn Emanuel received from Rai confidential information that is material to this litigation. Finally, Quinn Emanuel has not satisfied the exceptions under Rule 1.18(d).[5]

1.     Plaintiff was a "prospective client" of Quinn Emanuel.

Under Rule 1.18, a "prospective client" is a "person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in the lawyer's professional capacity." Rule 1.18(a).

---

[4] As an alternative to meeting all four elements to trigger the exception, a firm must show "informed written consent" by the affected client(s) and prospective client(s). Rai does not consent, so Quinn Emanuel cannot make that showing here.

[5] It is indisputable that, in this litigation as well as in the substantially related *Attia* matter, Quinn Emanuel's clients (Defendants) have interests that are materially adverse to Rai's. Indeed, Rai is the plaintiff in this matter and seeks substantial damages from Defendants, who have hired Quinn Emanuel to defend against Rai's claims. Oura is also suing Rai in Finland for his involvement in the *Attia* matter, and in the federal *Attia* litigation, Oura has blamed Rai for issuing stock options to Attia.

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

Dynamis LLP

It is indisputable that Rai first contacted Quinn Emanuel with the intent of potentially hiring the Firm to represent Rai in this litigation. *See* Rai Decl. at ¶ 1; Ex. P. Nothing more is required to show that Rai is a "prospective client" under Rule 1.18(a). *See, e.g.*, *SkyBell Techs., Inc. v. Ring, Inc.*, No. SACV-18-00014 JVS (JDEX), 2018 WL 6016156, at *5 (C.D. Cal. Sept. 18, 2018) (holding that "SkyBell is a prospective client within the meaning of Rule 1.18(a)" because SkyBell "consulted [the attorney] for the purpose of determining whether to retain Orrick to represent it in patent litigation").

> ### 2. Quinn Emanuel received from Rai confidential information that is material to this litigation.
>
> #### a. *Confidentiality*

Rule 1.18's prohibition applies when "the lawyer received from the prospective client information protected by Business and Professional Code section 6068, subdivision (e) and rule 1.6 that is material to the matter . . . ." Under § 6068(e)(1), "[i]t is the duty of an attorney to do all of the following: [t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." *See* Cal. Bus. & Prof. Code § 6068(e)(1).[6] "Even the briefest conversation between a lawyer and a client or prospective client can result in the disclosure of confidences." *Exp.-Imp. Bank of Korea v. ASI Corp.*, No. CV 16-2056-MWF (JPRX), 2019 WL 8200603, at *7 (C.D. Cal. Jan. 16, 2019) (cleaned up). Confidentiality arises when, for example, the lawyer learns information only through a disclosure made in confidence by the prospective client. *See Ocean Thermal Energy Corp.*, 2020 WL 5237276, at *8 ("Tulk's emails to the receiver constituted confidential information . . . . Tulk disclosed his emails with the receiver to [the lawyer] in confidence" and the lawyer "learned of these emails as a result of the consultation with Tulk[.]"). It is also relevant if the client possesses or conveys a desire for confidentiality. *See e.g.*, *Diva*

---

[6] Additionally, Rule 1.6 prohibits a lawyer from revealing information protected from disclosure under Cal. Bus. & Prof. Code § 6068(e)(1) "unless the client gives informed consent" or the lawyer "reasonably believes the disclosure is necessary to prevent a criminal act that the lawyer reasonably believes is likely to result in death of, or substantial bodily harm to, an individual." Cal. R. Prof. Cond. 1.6(a), (b). Quinn Emanuel has no factual or legal basis to rely on those exceptions.

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

DYNAMIS LLP

*Limousine, Ltd.*, 2019 WL 144589, at *8-9 (finding confidentiality where client "had the expectation that such communications . . . would be confidential" and "the written communications were typically marked privileged").

For multiple independent reasons, Rai's communications with Quinn Emanuel are confidential under those standards. First, Rai marked many of his written communications "privileged and confidential." *E.g.*, Ex. P. Therefore, he not only expected confidentiality but also conveyed that expectation to Quinn Emanuel. Second, the Quinn Emanuel attorneys promised that they would maintain Rai's confidences. A lawyer cannot promise confidentiality only to then repudiate that obligation and harm the prospective client. Third, Rai provided Quinn Emmanuel with a substantial amount of nonpublic factual information related to his claims against Oura (and related to the *Attia* litigation against Oura). Rai Decl. ¶¶ 3-10; Ex. P. The emails included Rai's thoughts and mental impressions about the strength of his claims; disclosed the existence of various nonpublic documents; and included confidential advice that Rai had received from other attorneys. Rai Decl. ¶¶ 3-10; Ex. P. Finally, the discussions with Quinn Emanuel covered Rai's legal strategy, potential weaknesses in Rai's case, and Rai's financial position. Rai Decl. ¶¶ 3-10. Rai would never have agreed to discuss that type of information if it were not treated as confidential.

In sum, Quinn Emanuel received the precise type of client information, privileged information, legal analyses, and work product that must be protected by licensed attorneys (in California and nationwide). The information, therefore, is confidential under Rule 1.18.

### b. *Materiality*

Under Rule 1.18, materiality is evaluated at the time that the party moves to disqualify counsel. *Winter v. Menlo*, 331 Cal.Rptr.3d 377, 385 (Cal. Ct. App. 2025). "[M]ateriality in the context of a disqualification motion under Rule 1.18 means materially harmful" to the potential client if disclosed. *Id.* at 390. As the *Menlo* court recognized, information can be material even if it "may later be explored in discovery," as "the preliminary disclosure of certain information by a prospective client could give an opposing side an advantage in discovery." *Id.* at 393.

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

DYNAMIS LLP

Prior to *Menlo*, moreover, courts had held that information was "material" under Rule 1.18 when the information was reasonably necessary for a law firm to assess whether to represent the prospective client or where the information involved facts that were important to the putative client's case strategy. *See SkyBell Techs., Inc.*, 2018 WL 6016156 at *6 ("Orrick's argument that this information is not material to the matter is inconsistent with its position . . . that this same information was reasonably necessary for it to determine whether to represent SkyBell in this matter."); *Exp.-Imp. Bank of Korea*, 2019 WL 8200603, at *8 ("[T]he Court is persuaded by [the prospective client]'s arguments as to why the information disclosed to Paul Hastings—facts [the prospective client] considered important to this litigation and 'strictly confidential,' [the prospective client]'s understanding of the case at the time, potential claims that have never been publicly disclosed to this day, the role of [the defendant] in the alleged fraud, potential legal strategies, etc.— is material.").

Here, the subject information meets any standard of "materiality." As explained *supra*, Rai and Quinn Emanuel discussed Rai's legal strategy in this litigation and explicitly highlighted potential weaknesses in Rai's case. If revealed to Oura's present counsel, that information would suggest defensive strategies and materially harm Rai in his claims against Oura. The information Rai revealed about his role at the company, and his thoughts and strategy vis-à-vis *Attia*, could also be used by Oura *against* Rai in the substantially-related Finnish litigation (if revealed to Oura's current counsel).[7] Stated differently, Rai does not want Oura or Oura's external counsel to have that information, and Rai would not have provided that information to Quinn Emanuel if he had known that the firm would even consider representing Oura.

---

[7] "If there is a reasonable possibility that confidences were disclosed that could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed." *Trone v. Smith*, 621 F.2d at 998; *see also Diva Limousine Ltd.*, 2019 WL 144589, at *6 ("The purpose of the substantial relationship inquiry is to determine if information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issue is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues.").

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

In sum, disclosure of the subject information would undoubtedly harm Rai in this litigation, as well as in any other litigation involving Rai and Oura (including unfiled claims that Rai discussed with Carlinsky and Oblak). Thus, the subject information was material under Rule 1.18(c).

### 3.    Quinn Emanuel has not met the exceptions under Rule 1.18(d).

"[T]he exception under Rule 1.18(d)(2) . . . permits representation if [the firm] (1) took reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent" the prospective client, and "(2) timely set up an ethical screen and notified [the prospective client] of the potential conflict." *Exp.-Imp. Bank of Korea*, 2019 WL 8200603, at *9; *see also SkyBell Techs., Inc.,* 2018 WL 6016156, at *6 (same).

Quinn Emanuel has not met—and cannot meet—the requirements to trigger this exception. First, the Firm did not take reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent Rai. Second, the Firm did not timely establish an ethical screen sufficient to protect Rai's confidential information.

### a.    *Quinn Emanuel did not take reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent Rai.*

"Rule 1.18(d)(2) not only requires that the information received by the attorney be reasonably necessary to determine whether to represent the prospective client, but it also states that the attorney must take 'reasonable measures' to avoid or limit exposure to this information." *SkyBell Techs., Inc.*, 2018 WL 6016156, at *7. "Likewise, Comment [3] to the Rule states that the attorney 'must limit the initial interview' to receive only information that is reasonably necessary." *Id.* Accordingly, "there must be some type of preceding or concurrent affirmative act that is carried out by [the firm] to limit the disclosure." *Exp.-Imp. Bank of Korea*, 2019 WL 8200603, at *9; *see also SkyBell Techs., Inc.*, 2018 WL 6016156, at *7 ("The Rule explicitly contemplates that the attorney take some type of affirmative step or act to limit or avoid exposure to more information than is necessary."). Critically, "[i]t is **not** enough that the information the attorney received, in hindsight, was reasonably necessary to determine whether to represent the prospective client. There must be

---

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

DYNAMIS LLP

some type of preceding or concurrent affirmative act that is carried out by the attorney to limit the disclosure." *SkyBell Techs., Inc.,* 2018 WL 6016156, at *7 (holding that law firm had not taken reasonable measures where, after conflict check, law firm conducted a "one hour telephone conversation and a three-hour in person meeting" with the prospective client and did not limit information that the prospective client provided).

When consulting with Rai, Quinn Emanuel did not take reasonable measures to avoid or limit exposure to Rai's information. Quinn Emanuel's initial email to Rai requested that Rai limit the information provided to the firm—and only provide the information necessary for a conflict check. In response, Rai told Quinn Emanuel that Oura and its board were adversaries.

The Firm subsequently elicited additional confidential documents and information. *E.g.*, Ex. P. The Firm asked Rai for factual information and discussed Rai's legal strategy in the case. *See* Rai Decl. ¶¶ 3-8; Ex. P. After the initial pre-conflict check email, Quinn Emanuel never said or did *anything* to prevent Rai from providing confidential case information or to otherwise limit the information he provided. Rai Decl. ¶ 9. Rai was not told to withhold information (rather, Oblak explicitly solicited more information from Rai). *Id.*; Ex. P. Rai was not told about any potential conflicts or told that Quinn intended to represent Oura against *Attia*. Rai Decl. ¶ 11-12. Nor was Rai told that it was legal, ethical, permissible, or possible for the Firm to represent (or even pitch) the very Defendants that Rai intended to sue. *Id.* Instead, Quinn Emanuel's communications with Rai continued up until the date that Rai filed his complaint against Oura. Rai Decl. Ex. 2.

Thus, the Firm cannot show that it had or followed any system, engaged in a preceding act, or engaged in a concurrent act to limit the information provided by Rai. Absent that showing, Quinn Emanuel has violated Rule 1.18, causing harm to the Firm's prospective client.

          *b.*     *Quinn Emanuel did not timely establish a sufficient ethical screen.*

In addition to the requirements discussed above, Rule 1.18(d) requires that "(i) the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and (ii) written notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule.'" *Menlo*, 331 Cal.Rptr.3d at 385

DYNAMIS LLP

(quoting Cal. R. Prof. Cond. 1.18(d)). "The specific elements of an effective screen will vary from case to case, although two elements are necessary." *Kirk v. First Am. Title Ins. Co.*, 108 Cal.Rptr.3d 620, 645 (2010). "First, the screen must be timely imposed; a firm must impose screening measures when the conflict first arises." *Id.*; *see also, e.g.*, *Signature MD, Inc. v. MDVIP, Inc.*, No. CV 14-5453-DMG (SSx), 2015 WL 12781603, at *3 (C.D. Cal. Jan. 20, 2015) (ethical wall must "be implemented *before* undertaking the challenged representation") (emphasis in original). "Second, the firm must impose preventative measures to guarantee that information will not be conveyed." *HDMI Licensing Administrator*, 730 F. Supp. 3d at 1035 (N.D. Cal. 2024). The trial court must engage in "a case-by-case inquiry focusing on whether the court is satisfied that the tainted attorney has not and will not have any improper communication with others at the firm concerning the litigation." *Id.*

For <u>two</u> reasons, Quinn Emanuel's "ethical screen"—as outlined by the Firm's communications—is insufficient. <u>First</u>, the Firm did not timely implement the ethical screen. Rai consulted with Quinn Emanuel from October 10th through November 6th. As described, Oura began consulting with Quinn Emanuel on November 4, 2025 on the substantially-related *Attia* matter. By then, Quinn Emanuel was already well aware that Rai, a potential client, was adverse to Oura and its Board of Directors. Moreover, Oura had already sued Rai in Finland, and a cursory review of the *Attia* Amended Complaint indicates that Oura and its Board intend to blame Rai for issuing options to Attia. Thus, any reasonable conflict check would have unearthed that representing Oura in the *Attia* litigation would violate Rule 1.18(c), and thus, a screen should have been set up immediately, with notice provided to Rai. R. 1.18(d)(2)(ii).

But Quinn Emanuel did not provide that notice or institute a screen. Nor did Quinn Emanuel even institute a screen when, on November 7th, Oura contacted the Firm about Rai's case. Instead, the Firm continued to wait until November 18th—two weeks after the conflict arose—to implement the "ethical screen" meant to protect Rai's information from disclosure to others within the Firm. Economides Decl., Ex. A; D.

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

DYNAMIS LLP

DYNAMIS LLP

In addition, Quinn Emanuel's screening procedures have failed and continue to fail. Most notably, the Firm's conflict check system and screening procedures failed when Rai specifically warned Quinn Emanuel that Oura and its Board were adversaries, *see* Ex. P, and Quinn Emanuel went ahead and engaged with Oura anyway without imposing any type of ethical screen. This shows that the conflict check system is ineffective.

Conversely, if the Firm flagged the conflict but left it unaddressed for two weeks—without giving notice to Rai and without implementing any screening protections—then the Firm's ethical screening system is untimely and defective. Either way, for a period of two weeks, Quinn Emanuel did not implement a "timely screen[]" under Rule 1.18, and the Firm's representation of Oura is an ethical violation. *See, e.g.*, *HDMI Licensing Administrator*, 730 F. Supp. 3d at 1035 ("On its own, [the firm]'s failure to impose a timely ethical screen is a sufficient basis to impute the conflict of the firm's Beijing attorneys to the entire firm."); *Signature MD*, 2015 WL 12781603, at *3 (granting motion to disqualify where plaintiff's counsel implemented ethical screen two days after accepting the representation); *Exp.-Imp. Bank of Korea*, 2019 WL 8200603, at *10-11 (ethical screen insufficient where it was established "four days after the Notice of Association of Counsel was filed," and four weeks after firm began representing defendant in a related action).

<u>Second</u>, Quinn Emanuel has failed to take sufficient preventative and procedural measures to protect Rai's information. In other words, the Firm's ethical screen is deficient (irrespective of the delay in its implementation). The Firm's notice of screening and subsequent communications listed exactly three individuals who were subject to the ethical screen: Carlinsky, Oblat, and Sadler. *See* Rai Decl., Ex. A; Ex. C. However, Carlinsky's early emails with Rai included Loigman (a current partner at the Firm), who was exposed to the confidential information on the email chain. *E.g.*, Ex. P. Oblak also explicitly told Rai that he had consulted with European colleagues about strategy in Rai's cases, yet the Notice lacks information about any individual outside of the New York City office—despite the possibility that Cafferata will consult those exact same European attorneys about the exact same issue (or already has). *See* Rai Decl. ¶ 7. Consequently, there are multiple attorneys at Quinn Emanuel who have received Plaintiff's privileged and confidential

21

information about Oura but who are *not* screened from representing Oura or from sharing information with the current team on Oura's case.

As an additional defect, the Firm has not identified (or screened) any other employees (e.g., paralegals or staff) who have accessed Rai's confidential materials. The Firm's preventative measures, therefore, cannot be adequate. *See Google LLC v. NAO Tsargrad Media*, 2024 WL 4844799, at *7 (explaining that "courts have the power to disqualify a firm for conflicts imputed from a paralegal" or "for having contacts with conflicted, non-lawyer experts"); *see also, e.g.*, *Fluidmaster, Inc. v. Fireman's Fund Ins. Co.*, 25 Cal. App. 5th 545, 552, 235 Cal.Rptr.3d 889, 894 (2018) (explaining that "the target firm should, at the very least, provide declarations from each member of its team working on the former client's matter, plus those attorneys (usually on the professional responsibility unit of a large firm) who learned of the facts that prompted the erection of the ethical screen in the first place"). Indeed, the employee who uploaded the materials during counsel's communications with Olivar and Riley is located in the same office as Cafferata and Lovato but is not listed as being subject to the ethical screen.

As a further defect, the Firm's "ethical screen" did not even capture all of Rai's emails with Quinn Emanuel. To date, Rai has identified at least two additional emails that were not contained in the materials Quinn Emanuel provided to counsel. Rai Decl. ¶¶ 13-15; Ex. 1-2. And despite Rai's requests for "non-privileged documents to show the implementation of the screen (IT tickets or logs, written guidelines, etc. …)," Quinn Emmanuel has not disclosed any other information.

In sum, Quinn Emanuel has not complied with Rule 1.18(d). Hence, the Firm must be disqualified from representing Rai in this litigation.

**B.      The Equities Also Favor Disqualification.**

Once this Court has determined that a violation occurred, the Court may still ask whether the equities warrant disqualification. *Diva Limousine, Ltd.*, 2019 WL 144589, at *13 (citation omitted). Courts analyzing public policy considerations also include "(1) a client's right to chosen counsel; (2) an attorney's interest in representing a client; (3) the financial burden on a client to replace disqualified counsel; (4) the possibility that tactical abuse underlies the disqualification

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES

motion; (5) the need to maintain ethical standards of professional responsibility; and (6) the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." *Menlo*, 331 Cal. Rptr. 3d at 394 (internal citation and quotation marks omitted).

For three primary reasons, those considerations weigh strongly in favor of disqualification. To begin, there is no financial burden on Oura if it replaces its counsel in this matter. It is so early in the litigation that Oura and Quinn Emanuel have not even responded to Rai's complaint. Oura, therefore, is in the best possible procedural posture to replace counsel. Moreover, to the extent that disqualification is warranted in the *Attia* matter as well (it most likely is), Oura is already represented by Buchalter, meaning that Oura does not have to retain new counsel in that matter either.

Next, there are no indications that this motion is an abusive litigation tactic. Plaintiff has brought this motion and sought this relief as quickly as practicable. After receiving notice of Quinn Emanuel's conflict, Plaintiff (through counsel) investigated, requested additional information from Quinn Emanuel, diligently assessed whether the ethical screen complied with Rule 1.18(d), met and conferred with the Firm about disqualification, and then filed this motion. Economides Decl. Ex. A-D. That timeline negates any suggestion that Rai (or his counsel) is engaging in abusive tactics. *See Ocean Thermal Energy Corp.*, 2020 WL 5237276, at *9 (rejecting argument that party "brought the Motion as an abusive litigation tactic" where movant "raised the ethical concerns . . . quickly after the [moving party] retained counsel in this litigation and met and conferred extensively and in good faith about this issue").

Finally, although Oura has a right to chosen counsel (and Quinn Emanuel surely has an interest in keeping a major case), public policy strongly favors disqualification. It will chill frank discussions between prospective clients and lawyers if there is a concern that the lawyers will turn around and represent an adversary, and they will do so without first establishing a proper screen and providing notice to clients. The prospective clients will fear disclosing too much and will begin the attorney-client relationships with distrust. Meanwhile, lawyers will face difficulty in obtaining the necessary information to assess a prospective client's case, and firms will be forced to rely on more limited information when deciding to accept or reject a retention.

DYNAMIS LLP

23

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

On the other hand, a disqualification of Quinn Emanuel in this context will only reiterate the requirements under Rule 1.18. Before taking on a complex matter that may be litigated for years, a large firm may want a pathway to consult in good faith with multiple parties. Rule 1.18 provides that path, but only if the firm first implements and complies with a system to protect prospective clients. Quinn Emanuel did **not** have that system, and its ethical screen has presented Rai with more risks than protections as to the safety of his privileged and confidential information. The Firm should not be rewarded for those failures, and Rai should not suffer the prejudice. Thus, it is good public policy to enforce Rule 1.18 as written; to disqualify Quinn Emanuel; and to set a precedent that untimely, lackluster, or post-hoc efforts by a firm are insufficient.[8]

In sum, the equities favor disqualification. The motion should be granted, and under Rule 1.18, Quinn Emanuel should be disqualified from representing the Defendants.

### C.    <u>Quinn Emanuel or Oura Should Pay Plaintiff's Fees and Costs Incurred in Bringing This Motion.</u>

When granting motions to disqualify, courts may also grant fee awards to the moving parties. *See, e.g.*, *Advanced Messaging Techs., Inc. v. EasyLink Services Intern. Corp.*, 913 F. Supp. 2d 900, 913 (C.D. Cal. 2012) ("Defendants shall reimburse j2's reasonable attorneys' fees and costs incurred in connection with the Motion [to Disqualify]"); *REC Solar Grade Silicon, LLC v. Shaw Group, Inc.*, No. CV-09-188-RMP, 2011 WL 13228176, at *4 (E.D. Wash. Feb. 23, 2011) (holding that movant was entitled to attorneys' fees under 28 U.S.C. § 1927 after successfully moving to disqualify Mayer Brown).

This Motion warrants fees. Quinn Emanuel caused the situation. The Firm had a flawed conflict check system and consulted both sides of the same dispute. In so doing, the Firm failed to

---

[8] Quinn Emanuel's apparent disregard towards the obvious conflict is consistent with the Firm's recent disqualifications—including in this Court—for similar ethical violations. *See e.g.*, *X Corp. v. Bright Data Ltd.*, 2024 WL 3408220, at *1 (N.D. Cal. July 12, 2024); *SC Innovations, Inc. v. Uber Techs., Inc.*, 2019 WL 1959493, at *10 (N.D. Cal. May 2, 2019); *see also, e.g.*, *Gil-White v. Alterna Capital Partners, LLC*, No. 655864/2023, at *7-*8 (N.Y. Sup. Ct. Oct. 25, 2024). Public policy should not condone or promote Quinn Emanuel's repeated and brazen disregard of the Rules of Professional Conduct.

DYNAMIS LLP

1  flag any potential conflict issues for Rai and instead induced Rai to provide more confidential and

2  privileged strategy information than was necessary for a consultation. Quinn Emanuel's conduct

3  violated the Rules of Professional responsibility causing harm to Rai, while earning money for the

4  Firm. Rai had no idea this situation was even possible with licensed attorneys—until he filed his

5  Complaint, and then learned that Quinn Emanuel would represent Defendants. Rai no longer feels

6  comfortable trusting firms in consultations over prospective representation. And Rai's only recourse

7  was to file this Motion. There is no good legal, equitable, or policy reason for Rai to have incurred

8  the cost of remedying Quinn Emanuel's ethical violation. Thus, Rai respectfully requests that the

9  Court grant entitlement to fees, subject to further submissions on the reasonable amount to be

10  awarded.

11  **VI.    <u>CONCLUSION</u>**

12          For the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion,

13  disqualify Quinn Emanuel from representing Defendants in this litigation, and issue any other relief

14  that the Court deems proper.

15  Dated: December 22, 2025                    Respectfully submitted,

16                                              **DYNAMIS LLP**

17

18                                              By:    */s/ Constantine P. Economides*
                                                CONSTANTINE P. ECONOMIDES (CA
19                                              SBN 363454)
                                                ceconomides@dynamisllp.com
20                                              1111 Brickell Avenue, 10th Floor
                                                Miami, FL 33131
21                                              Tel: (305) 985-2959

22                                              ERIC S. ROSEN (*pro hac vice*)
                                                erosen@dynamisllp.com
23                                              TYLER FINN (*pro hac vice*)
                                                tfinn@dynamisllp.com
24                                              KAITLYN GERBER (*pro hac vice*)
                                                kgerber@dynamisllp.com
25                                              175 Federal Street, Suite 1200
                                                Boston, MA 02110
26                                              Tel: (617) 802-9157

27                                              YUSEF AL-JARANI (CA SBN 351575)
                                                yaljarani@dynamisllp.com

28

NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND
AUTHORITIES

DYNAMIS LLP

1100 Glendon Ave., 17th Floor
Los Angeles, CA 90024
Tel: (213) 283-0682

*Attorneys for Plaintiff Harpreet Singh Rai*

DYNAMIS LLP

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on December 22, 2025, I caused a copy of the foregoing documents to

3 be served to all opposing counsel by electronically filing the documents using the CM/ECF

4 system, which will send notification of such filing to the email addresses registered in the

5 CM/ECF system.

6 Dated: December 22, 2025                         Respectfully submitted,

7

8                                  By: */s/ Constantine P. Economides*
                                 Constantine P. Economides

9                                  DYNAMIS LLP

10                                  *Attorney for Plaintiff Harpreet Singh Rai*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DYNAMIS LLP

27

**NOTICE OF MOTION TO DISQUALIFY AND MEMORANDUM OF POINTS AND AUTHORITIES**