United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARPREET SINGH RAI,<br>Plaintiff,<br>v.<br>OURARING INC., et al.,<br>Defendants. | Case No. 25-cv-09654-AMO<br><br>**ORDER RE MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

Plaintiff Harpreet Singh Rai was previously the Chief Executive Officer of Ouraring, a company that creates wearable technology. Rai contends Defendants Ouraring Inc. and Oura Health Oy failed to provide him with certain agreed-upon benefits following his exit from the company. In sum, Rai asserts four claims against Defendants: 1) breach of contract; 2) breach of the implied covenant of good faith and fair dealing; 3) unjust enrichment; and 4) promissory estoppel. Defendants move to compel arbitration, or in the alternative, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 34. Subsequently, Rai filed a motion to strike certain exhibits to the motion to compel arbitration based on improper redactions. Dkt. No. 41.

Having considered the parties' submissions, and with the benefit of oral argument, the Court **DENIES** Defendants' motion to compel arbitration. Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Separately, for the reasons stated during the hearing, the Court **DENIES** Rai's motion to strike. Dkt. No. 65 at 26.

## FACTUAL BACKGROUND

The following factual background comprises the well-pleaded allegations from the Complaint as well as additional facts offered through supporting declarations.

**a. The Complaint's Allegations**

In 2016, Plaintiff Harpreet Singh Rai invested $1,000,000 in the Series A financing round for Oura's wearable health-tracking device, the Oura Ring. Dkt. No. 1 ¶¶ 4, 40. So began Rai's ongoing relationship with Defendants. By May of 2017, Oura offered Rai the position of "President" of the company, an independent contractor position with an annual salary of $100,000 as well as 142,078 shares, equaling a 5% equity interest in Oura. *Id.* ¶¶ 6-7, 75. This 2017 Employment Agreement was signed by Rai and Petteri Lahtela, on behalf of Ouraring Inc. Dkt. No. 1-1 at 7. As alleged, the Agreement provided a 42-month vesting schedule for the equity component of Plaintiff's compensation. Dkt. No. 1 ¶ 11. In April 2018, Rai was appointed Chief Executive Officer, then leading the company through further funding rounds. *Id.* ¶¶ 9-10, 70-71.

However, by 2019, Chief Operating Officer Michael Chapp raised concerns that Rai was acting in his new role as CEO without a governing employment agreement. *Id.* ¶ 99. So, on August 6, 2019, Rai entered into another employment agreement, which was backdated to February 26, 2019. *Id.* ¶ 100; *see also* Dkt. No. 1-2 at 2, 9-10. This 2019 Employment Agreement included various provisions related to stock options, increased salary, and severance in the event of termination. Dkt. No. 1 ¶¶ 113-14. By May 2021, Rai's initial tranche of stock options had vested, but Defendants allegedly had not fully addressed his compensation. *Id.* ¶ 15. Thereafter, Rai requested the Oura Board "vote to grant his allocated stock options with vesting to begin retroactively on the date agreed upon" in the 2019 Employment Agreement. *Id.* On September 14, 2021, Rai met with the Board's Compensation Committee, which "proposed a new grant of 1.1% of outstanding shares, which would have increased [Plaintiff's] options to only 3% of equity." *Id.* ¶ 172. Additionally, the Committee offered Rai "another 1% of equity when Oura became valued at $5 billion, and another 1% when, and if, Oura reached a valuation of $10 billion." *Id.* Rai indicated this offer was not in conformance with his prior employment agreement, and the Board indicated it would continue to meet to discuss compensation. *Id.* ¶¶ 175-88. In November 2021, the Board allegedly refused to "formalize the grant of any additional equity," and Plaintiff was ultimately terminated without receiving severance. *Id.* ¶¶ 19, 200-13.



United States District Court
Northern District of California

United States District Court
Northern District of California

**b. The Employment Agreements**

Relevant to the instant motions, the 2019 Employment Agreement includes an Arbitration Agreement provision. Dkt. No. 1-2 at 9. This provision states:

> As a further condition of employment, you are required to review and execute a copy of the Dispute Resolution Agreement (attached and incorporated herein as Exhibit B). This Agreement shall not be effective until you have executed and delivered back to the Company a copy of Exhibit B.

*Id.* Attached to the Declaration of Margaret Widlund is an email chain indicating Rai received a copy of Exhibit B at the time the 2019 Employment Agreement was transmitted to him. Dkt. No. 34-2. The 2019 Agreement was signed by Rai and Kevin Lin, Chairman of the Board. Dkt. No. 1-2 at 9-10. Neither party has supplied an executed copy of Exhibit B.

## DISCUSSION

## I. MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. "[A]rbitration agreements [are] on an equal footing with other contracts," and therefore, a court must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). In adjudicating a motion to compel arbitration, "a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Further, the courts apply a summary judgment standard to resolve the motion. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). To prevail under this standard, Defendants must show there is no genuine issue of fact as to the formation of an agreement to arbitrate. *See id.*

Here, Defendants advance two arguments in support of arbitration. First, Defendants contend equitable estoppel requires Rai to arbitrate his claims. In the alternative, Defendants assert an agreement to arbitrate was formed through the conduct of the parties. The Court addresses each basis for the motion in turn.

### A. Equitable Estoppel

Beginning with equitable estoppel, Defendants cite *Setty v. Shrinivas Sugandhalaya LLP*, to support their position that Rai cannot "claim[] the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." 3 F.4th 1166, 1169 (9th Cir. 2021) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)). In the instant case, Defendants argue Rai has alleged a valid employment agreement between the parties, which includes an arbitration provision. To wit: since Rai relies on an agreement as the basis for his contractual claims, he cannot avoid that agreement's arbitration provision. The Court is not persuaded.

In their submissions, Defendants do not appear to take a position as to whether there was a valid employment agreement formed between the parties. Dkt. No. 44 at 10 ("Ouraring has never taken such a position. Nor does Plaintiff offer any authority that it must do so as a prerequisite to compelling arbitration based on the terms in the agreement on which Plaintiff bases his case."). Instead, they rely on estoppel to shift focus to the Complaint, specifically that Rai alleges an agreement as the basis of his claims. However, estoppel is a poor match for this scenario. Indeed, when the Ninth Circuit has identified potential estoppel fact patterns, the existence of a valid contract was a necessary precondition. For instance, in *Mundi*, the Court articulated two theories of estoppel:

> We have examined two types of equitable estoppel in the arbitration context. In the first, a nonsignatory may be held to an arbitration clause "where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" Under the second, a signatory may be required to arbitrate a claim brought by a nonsignatory "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations."

555 F.3d at 1046 (internal citations omitted). In describing these theories, the court distinguished between the parties based on whether they signed an otherwise valid agreement; the court did not contemplate a scenario in which the underlying agreement was invalid. And this makes sense, given the district court's role in assessing contract formation when resolving a motion to compel

arbitration. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir.1991)) (noting the court does not resolve "only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause").

To the extent Defendants argue the delegation clause of the agreement requires the arbitrator to determine contract validity, the Ninth Circuit has already considered and rejected that position. In *Sanford*, the court clarified that an arbitrator may decide "challenges seeking to avoid or rescind a contract—not [] challenges going to the very existence of a contract that a party claims never to have agreed to." *Id*. at 963. Ultimately, Defendants take an unusual position—they seek to enforce the arbitration provision in an employment agreement but take no position on the validity of the agreement. On this point, the Court finds the Third Circuit's analysis in *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000), persuasive. There, Sandvik opposed the motion to compel arbitration while asserting the agreement was binding; conversely, Advent argued the agreement was invalid, but still moved to compel arbitration. *Id*. at 104. The court ultimately agreed with Sandvik, noting Advent could not argue the agreement was invalid while maintaining the arbitration provision was severable. *Id*. at 106. In short, severability presumes the existence of a valid underlying contract, so a party cannot maintain the agreement is void while attempting to invoke a provision of the agreement. *Id*. Though *Sandvik* did not address the doctrine of equitable estoppel, its reasoning finds purchase here, since equitable estoppel similarly presumes the existence of a valid underlying contract. Thus, Defendants cannot sidestep the question of contract formation by relying on estoppel and still prevail on their motion.

**B. Agreement to Arbitrate**

Alternatively, Defendants argue an agreement to arbitrate was formed based on Rai's conduct. "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). Here, the parties do not dispute California law applies. "To form a contract under . . . California law, the parties must manifest their mutual assent to the terms of the agreement." *Id*. "Parties traditionally manifest assent by written or spoken word, but they

can also do so through conduct." *Id*. "However, '[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id*. (alteration in original) (quoting Restatement (Second) of Contracts § 19(2) (1981)). Considering the evidence submitted, Defendants have failed to show, by a preponderance of the evidence, that Rai assented to the contract.

In support of their motion, Defendants rely predominantly on three pieces of evidence. First, Defendants submit the declaration of Margaret Widlund, Vice President of Legal, Commercial & Litigation for the Oura entities, which states a copy of the Dispute Resolution Agreement was sent to Rai on March 6, 2019. Dkt. No. 34-1 ¶ 5. In an email attaching the Agreement, Ouraring Inc.'s Senior Director of Human Resources additionally stated: "NOTE, also the exhibits A and B need to be filled in and signed!" *Id*. Exhibit B refers to the Dispute Resolution Agreement that is the subject of this dispute. Second, Defendants turn again to the Widlund Declaration, which further states Rai negotiated over 20 employment agreements with other individuals, which contain the same arbitration provision, and he served as Ouraring Inc.'s signatory. *Id*. ¶ 6. Defendants argue this goes to Rai's knowledge of the arbitration provision and supports a finding that Rai was aware of the terms when assenting to his employment agreement. Third, Defendants observe Rai's own sworn declaration—submitted in opposition to the motion—does not deny he signed the Dispute Resolution Agreement. Rather, he states: "I searched my files and have not been able to locate a signed version of the Dispute Resolution Agreement or the transmission of a signed Dispute Resolution Agreement to Oura." Dkt. No. 40-1 ¶ 6.

Even so, drawing inferences in Rai's favor, this record does not show, by a preponderance of the evidence, that there was mutual assent to the Dispute Resolution Agreement. For his part, Rai declares he did not view the agreement attached in the March 6 email as "containing settled terms," and it was unusual for the Senior Director of Human Resources to email such information to him. *Id*. ¶¶ 10-11. Further, Defendants have not produced an executed copy of the Dispute Resolution Agreement. Absence of a signed version of the agreement is not dispositive of the issue, since assent can be manifested through conduct. *Berman*, 30 F.4th at 855. However, to

deduce that Rai agreed to arbitrate based solely on his continued work for Ouraring, would be an inference drawn in Defendants' favor—improper under the summary judgment standard. Indeed, this thin record supplies no evidence that Rai actually reviewed the Dispute Resolution Agreement sent to his email. Rather, Rai states the version of the Employment Agreement he reviewed and executed did not have a copy of the Dispute Resolution Agreement attached, and Defendants do not offer any evidence he signed it. Dkt. No. 40-1 ¶¶ 4, 7. Accordingly, Defendants have failed to carry their burden to show formation of an agreement to arbitrate.

To supplement their argument on contract formation, Defendants assert Rai waived the signature requirement for the Dispute Resolution Agreement through his conduct. Defendants point to language from the 2019 Employment Agreement indicating the Dispute Resolution Agreement was "incorporated," and the Employment Agreement was not "effective" until that Dispute Resolution Agreement was signed and returned. Dkt. No. 1-2 at 9. Based on these terms, Defendants contend Rai waived any signature requirement by continuing his employment at the company. The Court disagrees. Under California law:

> . . . a party to a contract waives a contractual right by indicating an intent to relinquish the right. The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. The waiver may be . . . implied . . . when that party's acts are ***so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished***. Thus, the pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right.

*hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 962-63 (N.D. Cal. 2022) (internal citations and quotations omitted) (emphasis added). Critically, "[w]aiver is ordinarily a question for the trier of fact; '[h]owever, where there are no disputed facts and only one reasonable inference may be drawn, the issue can be determined as a matter of law.'" *DuBeck v. California Physicians' Serv.*, 234 Cal. App. 4th 1254, 1265 (2015). Here, there are no disputed facts as to Rai's conduct. Defendants rely solely on the fact that Rai continued working at Ouraring to constitute waiver of the signature requirement. But this act is not "so inconsistent with an intent to enforce the right," since the more reasonable inference to be drawn from Rai's failure to sign is that he did not agree. Defendants' interpretation of this lone evidence does not constitute a "reasonable belief" that Rai

intended to obviate the signature requirement.

## II. MOTION TO DISMISS

"To survive a motion to dismiss for failure to state a claim after the Supreme Court's decisions in *Iqbal* and *Twombly*, plaintiffs' allegations must suggest that their claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014) (cleaned up). The district court must assume that the plaintiff's allegations are true and draw all reasonable inferences in their favor. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022). However, the court need not construe conclusory statements or unreasonable inferences as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

The crux of Defendants' motion is the Complaint does not allege conduct by Defendant Oura Health Oy, only Ouraring Inc., and there are not sufficient allegations to establish an alter ego theory of liability. As to the promissory estoppel and unjust enrichment claims, this argument is unpersuasive. The Complaint alleges both Oura entities shared a board of directors, and Rai operated as CEO of both companies. Dkt. No. 1 ¶ 53 n.2. Thereafter, Rai alleges the 2019 Employment Agreement was signed by Kevin Lin, a board member. Dkt. No. 1-2 at 9. Further, Rai avers the shared board was responsible for approving his compensation package. *See generally* Dkt. No. 1 ¶¶ 135-38, 157-82. Indeed, the capitalization table showing Rai would receive a 5% equity stake states "OURA HEALTH" at the top. *Id.* ¶ 95. And critically, Rai alleges a discussion with two Oura Health Board Members—Kevin Lin and Eurie Kim—promising him the stock options. *See, e.g.*, *id.* ¶ 245. Combined, these allegations permit a plausible inference that Oura Health Oy promised Rai certain compensation. Additionally, Rai's unjust enrichment claim survives because he has plausibly alleged he was the CEO of Oura Health Oy, provided valuable services to the company, and did not receive promised compensation for that work.

Regarding the breach of contract and implied covenant claims, the present allegations are insufficient. Under California law, "only a signatory to a contract may be liable for any breach." *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002). The 2019 Employment Agreement does not include Oura Health Oy as a named party, only Ouraring Inc.

Though Rai alleges Kevin Lin—the signatory—was a board member of both companies, he offers no factual allegations to permit a plausible inference that Lin was acting in his capacity as an Oura Health member when signing a contract on behalf of Ouraring Inc. Additionally, Rai has not alleged facts sufficient to infer the two organizations are mere alter egos. Indeed, the only allegation going to the question of alter ego is the existence of some shared executives between both Oura entities.

Therefore, the Court **DENIES** Defendants' motion to dismiss the promissory estoppel and unjust enrichment claims against Oura Health Oy. As to the breach of contract and implied covenant claims, the motion is **GRANTED,** with leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

**CONCLUSION**

For these reasons, Defendants' motion to compel arbitration is **DENIED**. Further, the motion to dismiss is **DENIED** as to the promissory estoppel and unjust enrichment claims. The motion to dismiss is **GRANTED** as to the breach of contract and implied covenant claim, **with leave to amend**. Last, Rai's motion to strike is **DENIED** for the reasons stated during the hearing. Should he choose to amend the Complaint, he must do so by October 23, 2026. Rai may not name new defendants or add claims absent stipulation or leave of Court. The Court sets an initial case management conference for November 19, 2026. The parties shall submit a joint case management statement ten days ahead of the case management conference.

**IT IS SO ORDERED.**

Dated: September 25, 2026

[signature]

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**